COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges AtLee and Athey
Argued by videoconference

UNPUBLISHED

MARK ISRAEL ARENCIBIA

MEMORANDUM OPINION[*] BY
v.      Record No. 0427-20-2          JUDGE CLIFFORD L. ATHEY, JR.
                                         DECEMBER 22, 2020

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Edward A. Robbins, Jr., Judge

John I. Jones, IV (C. David Sands, III; Winslow & McCurry, PLLC,
on brief), for appellant.

Maureen E. Mshar, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Mark Israel Arencibia ("Arencibia") appeals from his conviction in a bench trial in the

Circuit Court of Chesterfield County ("trial court"), for possession of a Schedule I or II

controlled substance with the intent to distribute, second offense in violation of Code § 18.2-248.

Arencibia was sentenced to five years' incarceration with two years suspended. On appeal,

Arencibia assigns error to both the trial court's denial of his motion to suppress statements he

made to law enforcement officers allegedly in violation of Miranda v. Arizona, 348 U.S. 436

(1966), as well as the sufficiency of the Commonwealth's evidence in support of his conviction.

Finding no error, we affirm the decision of the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On an appeal from a trial court's denial of a defendant's motion to suppress, this Court views the evidence "in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Washington v. Commonwealth, 60 Va. App. 427, 432 (2012) (quoting Glenn v. Commonwealth, 49 Va. App. 413, 416 (2007) (*en banc*)).

So viewed, the evidence in this case established that on the evening of April 19, 2018, Detective Hopkins of the Chesterfield County Police Department was parked in an unmarked vehicle at a Wawa gas station. While parked there, Detective Hopkins noticed the occupant of an SUV who seemed to be surveying the gas station parking area, waiting for another vehicle to arrive.

After only a few minutes of this surveillance, another vehicle arrived at the gas station parking area. Detective Hopkins observed Arencibia exiting his vehicle and entering the parked SUV. Detective Hopkins estimated that Arencibia was inside the SUV for only a minute or two before it appeared that Arencibia engaged in a transaction with the driver of the SUV. He then returned to his vehicle. Detective Hopkins immediately alerted the other members of his team, and traffic stops were conducted on both vehicles. In Arencibia's car, the police found three digital scales and an identification card belonging to Arencibia. The items were located between the driver's seat and the center console. On one of the digital scales officers found a white powdery residue later determined to be cocaine.

During the suppression hearing a recording from Detective Hopkins' body camera was admitted into evidence without objection. Prior to viewing the video recording, the trial court ascertained from Arencibia's counsel that the defendant agreed that he was properly advised of his Miranda warnings. As a result, the only issue in dispute was whether Arencibia waived his

Miranda rights by agreeing to speak with law enforcement or whether he did not waive his rights and was coerced into giving a statement to law enforcement.

The video recording reflected that Detective Hopkins introduced himself to Arencibia and explained that he wanted to read him his rights. Detective Hopkins then told Arencibia he could "work with [Arencibia]" if Arencibia was honest and cooperative. Arencibia responded, "I'm not gonna bullshit you, if you don't bullshit me, but that's some bullshit, he didn't find nothing." In response Detective Hopkins asked Arencibia to "hold on" while he read the Miranda warnings from a printed card. After which the following exchange occurred:

> Detective Hopkins: Do you understand you have a right to remain silent?
>
> Arencibia: No, I don't understand that.
>
> Detective Hopkins: Do you understand that anything you say can and will be used against you in a court of law?
>
> Arencibia: I don't understand any of that. I'm not a lawyer.
>
> Detective Hopkins: Do you understand that you have a right to talk to a lawyer and have one present with you while you are being questioned?
>
> Arencibia: I don't understand anything, Officer, I don't know, I'm not a lawyer.
>
> Detective Hopkins: Do you understand that if you can't afford to hire a lawyer, if you wish for one, one will be appointed to represent you free of charge?
>
> Arencibia: No ma'am, I mean, no sir.
>
> Detective Hopkins: Do you understand all these rights that I've explained to you?
>
> Arencibia: No, sir.

Once Detective Hopkins finished reading Arencibia his Miranda warnings, Detective Hopkins asked Arencibia which part of the warnings were difficult to understand since it appeared that

- 3 -

Arencibia did not listen to the warnings. Arencibia immediately answered, "Because I don't trust you guys. He just said he found three scales and I don't trust you all."

After a brief dialogue about Arencibia's lack of trust in the police and his desire for Detective Hopkins to turn off his body camera, Detective Hopkins again asked Arencibia to tell him what happened at the gas station. Arencibia, without any reluctance or hesitation, stated, "[w]hat happened was this," and explained that the man in the SUV had been calling Arencibia for two days "looking for drugs." Detective Hopkins asked Arencibia "How often do you sell," to which Arencibia replied, "I don't sell nothing."

Detective Hopkins pressed forward and responded, "You sold to him, be honest with me." Arencibia stated, "Yeah," and "It is what it is." Detective Hopkins then asked what Arencibia sold the driver of the SUV, and Arencibia responded that he had "no idea" exactly what he sold the driver but "it was supposed to be like, an opiate . . . either heroin or fentanyl or something similar." Further stating, "It's probably just a like a bunch of fucking whatever you cut it on."

At no point during Arencibia's interaction with Detective Hopkins did he expressly state a desire to remain silent, have an attorney present, or to terminate his conversation with the police. Finally, when Detective Hopkins said that what happened at the gas station was "blatantly obvious," Arencibia responded, "I know."

Prior to trial, Arencibia filed a motion to suppress his statements to Detective Hopkins. He argued that based on the video recording, he did not understand his Miranda rights and that any statements that he made to the police were coerced. He specifically asserted that:

> [It was] [t]he Commonwealth's burden . . . to show that the
> Miranda warnings [we]re read; we all agree they were. That my
> client understood them. I think that's an issue. And that the
> statements he made were uncoerced. I think that's an issue as well,
> because despite my client's saying that he didn't understand things,
> he didn't use the magical legal phrase I'm asserting my Fifth

Amendment rights. But again, Your Honor, I think looking at the totality of the circumstances, he was asserting that he didn't want to talk. He wasn't not going to and the officer kept asking him and kept asking him and I think at some point, that borders on the level of coercion. Looking at <u>Miranda</u> itself, there's a lot of dicta there about certain documents that police have and different interrogation tactics and I think that some of the conversation that happened there among Officer Hopkins, you'll hear another officer that's not here today say on there and kind of come into play, Dude, you're done. We know what's happened. We've been around for long enough. All of this while he's in handcuffs and multiple officers, so it's clearly custodial interrogation, Your Honor.

Our position today would be that the statements that were eventually made for my client were made without him understanding his <u>Miranda</u> rights, and again, were made with the coercion.

In response, the trial court initially ruled that since the parties agreed that Arencibia never expressly invoked his right to remain silent, the burden was on the Commonwealth to establish that he had waived his right to remain silent. The trial court further ruled that, after viewing the footage from Hopkins' body camera, Arencibia was clearly advised of his <u>Miranda</u> rights and based on his demeanor, tone, and the context of the conversation, Arencibia waived his right to remain silent. The trial court ultimately determined that the repeated questions of Detective Hopkins did not constitute coercion. As a result, the trial court denied Arencibia's motion to suppress.

At trial, the Commonwealth introduced into evidence the three digital scales found in Arencibia's vehicle and a certificate of analysis determining that the white powdery residue on one of the scales was, in fact, cocaine.

Detective Hopkins testified that he saw Arencibia get into the SUV and that both men were looking into their laps before Arencibia left the SUV less than a minute later. He also testified that inside the SUV, police found torn lottery tickets which were "indicative of

packaging of drugs," and a cigarette carton which contained "a brown substance consistent with heroin."

Arencibia moved to strike the Commonwealth's evidence arguing that they failed to prove the officers had reasonable suspicion sufficient to stop Arencibia's vehicle. The trial court denied the motion to strike, noting, "So with regard to the possession of a Schedule I or II controlled substance, the circumstantial evidence would seem to indicate not only intent to distribute but an actual distribution which certainly belies the intent."

Arencibia did not present any evidence but renewed his motion to strike after a closing argument where Arencibia challenged the sufficiency of the evidence. The trial court found that "the defendant's statements coupled with the other evidence in this case are sufficient." The trial court found Arencibia guilty of possession with the intent to distribute a Schedule I or II controlled substance, second offense. This appeal followed.

ANALYSIS

I. MOTION TO SUPPRESS

Arencibia makes two arguments challenging the trial court's decision to deny his motion to suppress. Specifically, Arencibia alleges that the continued questioning by Detective Hopkins after stating that he did not understand his rights pursuant to Miranda, made any subsequent answers involuntary.[1] Further, Arencibia contends that there was no implied waiver of his Miranda right to remain silent. Thus, Arencibia contends, his statements should have been suppressed. We disagree.

---

[1] The Commonwealth contends that Arencibia did not raise on appeal any argument regarding the "knowing and intelligent" portion of the alleged waiver of Miranda because he failed to include it in his assignments of error. See Rule 5A:12 (limiting appellate review to issues encompassed by assignments of error). However, the first assignment of error clearly challenges the voluntary nature of his statements. Whether a waiver is voluntary is inextricably linked to whether it was knowing and intelligent. See Tirado v. Commonwealth, 296 Va. 15, 28 (2018). As such, we address whether any waiver of Miranda was "knowing and intelligent."

A determination by a trial court that a criminal defendant has waived their <u>Miranda</u> rights "knowingly and intelligently is a question of fact that will not be set aside on appeal unless plainly wrong." <u>Angel v. Commonwealth</u>, 281 Va. 248, 258 (2011) (citing <u>Jackson v. Commonwealth</u>, 266 Va. 423, 432 (2003)). Here, after reviewing the body camera footage of Detective Hopkins' interaction with Arencibia, the trial court made a factual determination that Arencibia not only understood his <u>Miranda</u> rights, but also knowingly and intelligently waived them when he continued to speak with the police.

While "a valid waiver will not be presumed simply from the silence of the accused after the warnings are given," <u>Miranda</u> does not require "a waiver to be in writing or verbally expressed, nor does it preclude the conclusion that a waiver occurred based on the suspect's course of conduct." <u>Id.</u> at 259; <u>see</u> <u>Cheng v. Commonwealth</u>, 240 Va. 26, 35 (1990) ("Cheng's decision to talk with Officer Carter, after having been advised of the <u>Miranda</u> rights, constitutes an implied waiver of those rights."); <u>see also</u> <u>Eaton v. Commonwealth</u>, 240 Va. 236, 251 (1990) (inferring a waiver of defendant's right to counsel where defendant willingly engaged in discussion of the case with officers after receiving <u>Miranda</u> warnings).

Here, Arencibia's course of conduct, continuing to answer questions and talk to Detective Hopkins after receiving his <u>Miranda</u> warnings, supports the trial court's factual determination that Arencibia waived his right to remain silent. When confronted about his alleged lack of understanding of the <u>Miranda</u> warnings, Arencibia simply responded that he did not trust the police.

Immediately after stating that he did not understand the <u>Miranda</u> warnings, Arencibia asked Detective Hopkins if the detective could turn off his body camera before Arencibia spoke to him. Thus, although Arencibia protested that did not understand his <u>Miranda</u> rights as

Hopkins read them to him, the trial court was entitled to conclude otherwise, based on the tone and context of his conversation. See Flanagan v. Commonwealth, 58 Va. App. 681, 702 (2011).

Additionally, the record demonstrates that Arencibia was familiar with the legal system. Arencibia stated to Detective Hopkins, "Man, do you know how many times I've been to court?" Also, when Detective Hopkins asked Arencibia if he had ever been charged previously with possession with the intent to distribute, Arencibia laughingly answered, "You know I have."

Therefore, the record supports the trial court's finding that Arencibia understood his Miranda rights and its implicit ruling that when Arencibia continued to speak to Hopkins, immediately after being informed of his rights, he waived his right to remain silent.

The record also supports the trial court's determination that Arencibia's responses to Hopkins were not coerced. "[W]hether a statement was voluntary is a 'legal rather than factual question.'" Tirado v. Commonwealth, 296 Va. 15, 28 (2018) (quoting Gray v. Commonwealth, 233 Va. 313, 324 (1987)). Although "[v]oluntariness is a question of law, subject to independent appellate review[,]" we apply a "presumption of correctness" to "[s]ubsidiary factual questions." Secret v. Commonwealth, 296 Va. 204, 225 (2018) (quoting Avent v. Commonwealth, 279 Va. 175, 195 (2010)).

To determine the voluntariness of a statement, we assess "whether [it] was the product of an essentially free and unconstrained choice by its maker[.]" Id. at 226 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973)). We also consider "whether the maker's will 'has been overborne and his capacity for self-determination critically impaired.'" Avent, 279 Va. at 195 (quoting Midkiff v. Commonwealth, 250 Va. 262, 268 (1995)). "In determining whether a defendant's will has been overborne, courts look to the 'the totality of all the surrounding circumstances,' including the defendant's background and experience and the conduct of the police." Id.

As noted above, the record demonstrates that Arencibia was familiar with the legal system. Nothing in the record suggests that Detective Hopkins, or any other officer at the scene, explicitly or implicitly threatened Arencibia if he refused to speak with them. To the contrary, the body camera footage depicts Detective Hopkins simply asking Arencibia to be truthful as Detective Hopkins questioned him briefly about the incident at the gas station.

The trial court was able to observe on video the interaction between Arencibia, Detective Hopkins, and the other officers, and to assess whether Arencibia's will was "overborne" by the police. Based on the conduct of the police, the polite and brief nature of the questioning, and Arencibia's experience with the legal system, the trial court did not err by concluding that Arencibia's statements were not coerced. Accordingly, the trial court did not err by denying the motion to suppress.

## II. SUFFICIENCY OF THE EVIDENCE

Arencibia contends that, absent the statements made to the police, the evidence was insufficient to convict him of the intent to distribute. However, this is a misstatement of the role of this Court in reviewing the sufficiency of the evidence. As such, we find that the trial court did not err in finding the evidence sufficient to convict Arencibia of possession of a Schedule I or II controlled substance with the intent to distribute.

Under Code § 19.2-324.1, "when a challenge to a conviction rests on a claim that the evidence was insufficient because the trial court improperly admitted evidence, the reviewing court shall consider all evidence admitted at trial to determine whether there is sufficient evidence to sustain the conviction." Therefore, the statute requires us to consider all evidence admitted at trial to determine whether there is sufficient evidence to sustain Arencibia's conviction. See Wells v. Commonwealth, 65 Va. App. 722, 726 (2016).

"It is well settled what '[w]hen a defendant challenges the sufficiency of the evidence, we view the evidence and all reasonable inferences in the light most favorable to the Commonwealth, the prevailing party in the trial court.'" McArthur v. Commonwealth, 72 Va. App. 352, 367 (2020) (quoting Rowland v. Commonwealth, 281 Va. 396, 399 (2011)). "The judgment of conviction will be reversed only when the ruling is plainly wrong or without evidence to support it." Id. (citing Cordon v. Commonwealth, 280 Va. 691, 694 (2010)).

Here, when reviewing the record of the trial court, including Arencibia's statements to the police, it is clear that sufficient evidence exists to convict Arencibia. Detective Hopkins testified that he observed the interaction between Arencibia and the driver of the SUV. Subsequently, illegal narcotics were found in the other driver's SUV. Additionally, residue on the scale was confirmed to be cocaine upon forensic analysis.

A review of Detective Hopkins' body camera footage shows that Arencibia's statements confirm that he was in fact distributing Schedule I or II controlled substances. As the trial court noted, Arencibia was actively engaged in distribution at the time he was arrested. This corroborates Arencibia's statements to Detective Hopkins confessing to selling the drugs on that night. As such, we cannot say that the trial court was plainly wrong or without evidence in the record to support the conviction. Thus, we find that the evidence was sufficient to convict Arencibia.

CONCLUSION

For the foregoing reasons, we affirm the ruling of the trial court.

Affirmed.

- 10 -